UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| and | ) ) |
| DESEREA DEBRIENZA, | ) ) |
| Intervenor Plaintiff, | ) ) ) |
| v. | ) ) 2:24-cv-00204-JAW |
| METHUSELAH TREE, LLC, et al. | ) ) ) |
| Defendants. | ) |

**PRELIMINARY ORDER ON JOINT MOTION FOR CONSENT ORDER**

In a civil action against multiple defendants for discrimination on the basis of sex in violation of the Fair Housing Act, the federal government and one defendant jointly move for a consent order resolving the government's claims against that defendant. Noting that the intervenor's written consent is not reflected in the proposed order, that the proposed order may constitute a final judgment under Federal Rule of Civil Procedure 54, and that the other defendants have not been served with the joint motion, the court holds the joint motion in abeyance and orders the moving parties to respond to the issues raised by the court within this order prior to its final consideration of the motion.

I.      BACKGROUND

   A.      Allegations in the Complaint

On June 3, 2024, the United States of America (the Government) filed a civil complaint on behalf of Deserea Debrienza pursuant to 42 U.S.C. § 3612(o) against Robert Ross, Brian Bennett, Methuselah Tree, LLC (Methuselah), RLR Enterprises, LLC (RLR), and Henry Irvin Investments, LLC (Henry Irvin) (together, the Defendants), alleging the Defendants discriminated against Ms. Debrienza on the basis of sex in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619. *Compl.* (ECF No. 1) (*Gov't's Compl.*).

Specifically, the Government alleges Methuselah, a Maine limited liability company (LLC), owned and operated Apartment Number 4 located at 2 River Street in Lewiston, Maine (the 2 River Street property) and employed RLR, an LLC of which Mr. Ross was the sole member, as the property's onsite manager. *Id.* ¶¶ 4-6. Henry Irvin, another Maine LLC, owned and operated Apartment Number 3 located at 61 River Street in Lewiston, Maine (the 61 River Street property) and similarly employed RLR and Mr. Ross as that property's onsite manager. *Id.* ¶¶ 7-8. RLR in turn employed Mr. Bennett to perform maintenance services at both River Street properties. *Id.* ¶ 10.

Ms. Debrienza was a tenant of the 2 River Street property from about April 4, 2019 until about July 1, 2020, and of the 61 River Street property from about July 1, 2020 until about August 20, 2020. *Id.* ¶¶ 11-17. During this time, Ms. Debrienza

was in a vulnerable position on account of her limited resources and urgent need to provide housing for her family, including two young children. *Id.* ¶ 31.

While Ms. Debrienza was a tenant at the 2 River Street property, Methuselah contracted with RLR through its sole member, Mr. Ross, on October 1, 2019 to provide property management services at the 2 River Street property. *Id.* ¶ 14. Subsequently, between October 1, 2019 and July 24, 2020, Mr. Ross and Mr. Bennett subjected Ms. Debrienza to repeated and unwanted sexual statements and contact, engaging in a continuing pattern of quid pro quo and hostile environment sexual harassment against her through inappropriate sexual comments and unwanted sexual contact. *Id.* ¶¶ 18-19. The harassment began as inappropriate sexual comments, including remarks about her breasts and buttocks, requests for Ms. Debrienza to press her breasts against the glass window of her apartment, requests for sexual acts in exchange for money, and at least one offer from Mr. Bennett for a fifty percent discount in rent in exchange for sexual intercourse. *Id.* ¶¶ 20-21. On another occasion, Mr. Bennett stood below the porch of Ms. Debrienza's apartment and stared upwards to look up her shorts, later commenting on her underwear. *Id.* ¶ 22.

Mr. Ross and Mr. Bennett's uninvited sexual comments towards Ms. Debrienza escalated to unwanted sexual contact; between June 1, 2020 and July 24, 2020, Mr. Ross subjected Ms. Debrienza to unwanted touching and groping on several occasions, including touching her breasts and buttocks, wrapping his arms around her despite her protests, and slapping her buttocks while she was on the stairs of the two

3

apartment buildings. *Id.* ¶¶ 23-24. Further, on multiple occasions between June 1, 2020 and July 24, 2020, Mr. Bennett pinned Ms. Debrienza against walls or sinks in her apartment, stating on one such occasion "I have done so much work on your unit. You owe me." *Id.* ¶ 25.

Though Ms. Debrienza had refrained from filing a police report for fear of retaliation, she contacted Pine Tree Legal Assistance, a Maine civil legal aid provider, on or around July 7, 2020, seeking assistance to stop Mr. Ross's and Mr. Bennett's harassment. *Id.* ¶¶ 26, 32. She subsequently filed a police report with the Lewiston Police Department on or around July 9, 2020, recounting numerous incidents of harassment by Mr. Ross and Mr. Bennett. *Id.* ¶ 27. That same day, Ms. Debrienza filed complaints for protection from abuse with the Lewiston District Court against Mr. Ross and Mr. Bennett. *Id.* On July 24, 2020, the Lewiston District Court issued orders of protection from abuse against Mr. Ross and Mr. Bennett, respectively, prohibiting both from having any contact with Ms. Debrienza. *Id.* ¶ 28.

On August 4, 2020, members of the Lewiston Police Department interviewed Mr. Ross, who admitted physical contact with Ms. Debrienza in the form of "grabb[ing] and hugg[ing] Ms. Debrienza" and "that he had slapped Ms. Debrienza's buttocks, saying that he had done so to urge her to race up the stairs faster." *Id.* ¶ 29. That same day, the Lewiston Police Department interviewed Mr. Bennett, who admitted "he and Defendant Ross would, on occasion, yell 'boobs on glass,'" that he and Mr. Ross had pursued a relationship with Ms. Debrienza, and that he "might

4

have touched Ms. Debrienza's buttocks on one occasion when she was running down the stairs." *Id.* ¶ 30.

Mr. Ross's and Mr. Bennett's actions made Ms. Debrienza fear being home by herself and feel unsafe continuing to live at either of the River Street apartments. *Id.* ¶ 33. Unable to tolerate the harassment, Ms. Debrienza vacated the 61 River Street property on around August 20, 2020, resulting in a period of four months without permanent housing for her and her family. *Id.* ¶ 34. During this period, Ms. Debrienza and her family moved between a tent, a hotel room, and living with a family friend. *Id.* Mr. Ross's and Mr. Bennett's actions also caused Ms. Debrienza to suffer humiliation, fear, anxiety, emotional distress, economic damages, and loss of a housing opportunity. *Id.* ¶ 35. On January 10, 2022, Mr. Ross pleaded guilty to assault against Ms. Debrienza for offensive physical contact. *Id.* ¶ 36 (citing *id.*, Attach. 1, *J. and Commitment* (*Ross J.*).

On June 11, 2021, Ms. Debrienza timely filed a housing discrimination complaint (HUD Complaint) with the United States Department of Housing and Urban Development (HUD), alleging discrimination on the basis of sex in violation of the Fair Housing Act. *Id.* ¶ 37. Subsequently, the Government filed this complaint alleging the Defendants violated the Fair Housing Act by discriminating on the basis of sex, submitting that Mr. Ross's and Mr. Bennett's discriminatory conduct occurred while they and RLR were exercising their authority as employees and agents of, respectively, Methuselah at 2 River Street and Henry Irving at 61 River Street, and that these corporate defendants are thus vicariously liable. *Id.* ¶¶ 44-47. The

Government seeks declaratory and injunctive relief against the Defendants, in addition to monetary damages to Ms. Debrienza pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).  *Compl.* at 10-11, *Prayer for Relief* (a) – (e).

### B.     Procedural Developments

Summonses and the Government's complaint were issued to all Defendants on June 4, 2024.  *Summons in a Civ. Action* (ECF No. 3).  Methuselah waived service on June 25, 2025 and entered an appearance of counsel on July 2, 2024.  *Waiver of the Service of Summons* (ECF No. 4); *Appearance of Counsel* (ECF No. 5).  Summonses were returned executed, respectively, by Henry Irvin on June 20, 2024; Mr. Bennett on July 8, 2024; Mr. Ross on July 9, 2024; and RLR on July 9, 2024.  *Summons in a Civ. Action* (ECF No. 6) (*Henry Irvin Executed Summons*); *Summons in a Civ. Action* (ECF No. 7) (*Bennett Executed Summons*); *Summons in a Civ. Action* (ECF No. 8) (*Ross Executed Summons*); *Summons in a Civ. Action* (ECF No. 9) (*RLR Executed Summons*).

On July 23, 2024, Mr. Bennett, appearing pro se, filed an answer to the complaint "strongly deny[ing] all allegation[s] made by Ms[.] Debrienza," stating "[t]h[e]y are false and made up."  *Answer* (ECF No. 12) (*Bennett Answer*).  Methuselah answered the complaint on August 12, 2024.  *Def. Methuselah Tree, LLC's Answer to Pl.'s Compl. and Affirmative Defenses* (ECF No. 10) (*Methuselah Answer*).  The

remaining Defendants—RLR, Mr. Ross, and Henry Irvin (together, the Non-answering Defendants)—did not answer the complaint.

On August 29, 2024, the Government moved for an entry of default against the Non-answering Defendants. *Request for Clerk to Enter Default Against Defs. Henry Irvin[] Invs. LLC, Robert Ross, and RLR Enters.* (ECF No. 14) (*Gov't's Mot.*). The Clerk of Court granted the motion and entered default against the Non-answering Defendants that same day. *Order* (ECF No. 15).

Ms. Debrienza moved to intervene as a matter of right on December 10, 2024, which the United States Magistrate Judge granted on January 2, 2025. *Pl./Intervenor Deserea Debrienza's Mot. to Intervene* (ECF No. 18); *Order* (ECF No. 21). Ms. Debrienza filed an intervenor complaint on January 8, 2025, alleging violations of the Fair Housing Act (Count I), negligence (count II), assault (Count III), battery (Count IV), intentional infliction of emotional distress (Count V), and breach of the covenant of quiet use and enjoyment (Count VI). *Compl. in Intervention* (ECF No. 22) (*Debrienza Compl.*). She demanded a jury trial on all counts on January 22, 2025. *Demand for Trial by Jury* (ECF No. 26).

On February 6, 2025, the Government and Methuselah (together, the Moving Parties) jointly moved for a consent order, seeking to resolve all claims brought by the Government against Methuselah and submitting as an attachment the proposed order. *Joint Mot. for Consent Order* (ECF No. 29) (*Joint Consent Order Mot.*); *see also*

7

*id.*, Attach. 1, *[Proposed] Consent Order between the U.S. and Methuselah Tree, LLC* (*Proposed Consent Order*).

    **C.    Pending Joint Motion for Consent Order between the Government and Methuselah**

In the joint motion for consent order, the Moving Parties ask the Court to enter an order resolving all claims brought by the Government against Methuselah. *Joint Consent Order Mot.* at 1. They inform the Court that, as set forth in paragraph sixteen of the proposed consent order, Ms. Debrienza will separately execute a release with Methuselah. *Id.* The Moving Parties continue by explaining that the proposed consent order does not resolve any of the Government's claims against Mr. Ross, RLR, Mr. Bennett, or Henry Irvin. *Id.* at 2.

The proposed consent order, attached to the joint motion and signed by both the Government and Methuselah, contemplates that the Court will order Methuselah, should it "re-enter[] the business of owning, operating, or managing rental properties" to notify the Government within fifteen days of its interest in the property, the property's address, and the number of dwelling units at the property, and to provide a copy of the documents memorializing the transfer. *Proposed Consent Order* ¶ 12. Further, the Court would enjoin Methuselah and its officers, agents, and employees from engaging in any form of discriminatory conduct with respect to rental of dwellings. *Id.* ¶ 13.

The proposed consent order also permanently enjoins Methuselah from hiring, retaining, or otherwise using or relying on RLR, Mr. Ross, or Mr. Bennett for any purpose. *Id.* ¶ 14. Methuselah also commits to paying $35,000 in monetary damages

to Ms. Debrienza within fifteen days of the consent order's entry. *Id.* ¶ 15. "As a prerequisite to receiving any payments," the proposed order states, "Ms. Debrienza shall complete, execute, and deliver to counsel for Defendant Methuselah a W-9 form and a release in a form previously negotiated.  Such release shall state that Ms. Debrienza does not release any claims she might have against Defendant RLR, Defendant Henry Irvin, Defendant Ross, or Defendant Bennett." *Id.* ¶ 16. The proposed order also represents that the payment constitutes a debt within the statutory meaning of 11 U.S.C. § 523(a)(6), such that Methuselah will not seek to discharge any part of this debt in bankruptcy. *Id.* ¶ 17.

The proposed consent order continues that "[t]he Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the United States' claims against Defendant Methuselah shall be dismissed with prejudice" and contemplates "[t]he order shall be in effect for a period of three (3) years from the date of its entry" unless the Government moves to extend its duration in the event of noncompliance or in the interests of justice. *Id.* ¶ 18. The proposed consent order concludes that, except for a court-ordered imposition of reasonable attorney's fees in the event of noncompliance by Methuselah, "the parties will each bear their own costs and attorney['s] fees associated with this litigation." *Id.* ¶ 21.

## II.    DISCUSSION

The Court issues this preliminary order to address some lingering questions that warrant resolution prior to entering a final order on the joint motion.

9

### A.      Lack of Ms. Debrienza's Written Consent

First, the Court notes the Moving Parties' proposed consent order contains signatures from the Government and Methuselah; it does not, however, include the signatures of Ms. Debrienza or her attorneys.  This absence notwithstanding, the proposed consent order nonetheless makes representations regarding Ms. Debrienza's consented-to relief in the form of $35,000 in monetary damages to her and obligates her to provide "[a]s a prerequisite to receiving any payment . . . a W-9 form and a release in a form previously negotiated." *Id.* ¶¶ 15, 16.

Further, despite the Moving Parties indicating that "[Ms.] Debrienza will separately execute a release with [Methuselah]" in their joint motion, *Joint Consent Order Mot.* at 1, the proposed consent order shares no additional information as to the effect of the consent order on Ms. Debrienza's intervenor complaint.  This lack of information is especially concerning because the proposed consent order may affect Ms. Debrienza's Count I, which is redundant to the Government's claim brought, and now agreed to be resolved, against Methuselah. *Compare Govt's Complaint* ¶¶ 44-49 *with Debrienza Compl.* ¶¶ 48-52.  In contrast, the proposed consent order clearly articulates the proposed consent order's lack of effect on Ms. Debrienza's claims against the Mr. Ross, Mr. Bennett, RLR, and Henry Irving. *See Proposed Consent Order* ¶ 16.

The Court also notes that the proposed consent order agrees "the parties will each bear their own costs and attorney's fees associated with this litigation" but does not clarify whether this provision extends to Ms. Debrienza and, if so, whether she

10

consents to it. *Id.* ¶ 21. This agreed-upon provision appears to conflict with Ms. Debrienza's intervenor complaint, which specifically requests an award of all costs and attorney's fees pursuant to 42 U.S.C. § 3613. *Debrienza Compl.* at 13, *Prayer for Relief* (F).

Four issues thus confront the Court, which it orders the Moving Parties to address before the Court determines whether to enter the proposed consent order:

1) Has Ms. Debrienza reviewed and consented to the proposed consent order?

2) If the consent order impacts Ms. Debrienza's requested relief and obligates her to take particular action, is the Court permitted to enter the consent order without Ms. Debrienza's signature evidencing her consent?

3) Does the provision in the proposed consent order governing costs and attorney's fees apply to Ms. Debrienza and, if so, does she consent to its terms?

4) Does this proposed consent order, irrespective of the separate release apparently contemplated between Ms. Debrienza and Methuselah, have any effect on the claims against Methuselah raised in Ms. Debrienza's intervenor complaint?

**B.    Consent Order as Final Judgment**

Next, the Court is concerned that, despite its framing by the Moving Parties as a "consent order," the resolution of claims against Methuselah functionally serves as a piecemeal final judgment in violation of Federal Rule of Civil Procedure 54.

Rule 54 defines a "judgment" as "includ[ing] a decree and any order from which an appeal lies." FED. R. CIV. P. 54(a). In a case involving multiple claims or multiple parties, the Rule instructs that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly determines*

*that there is no just reason for delay."* FED. R. CIV. P. 54(b) (emphasis added by Court). "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

Confronted with the related question of whether an order constituted a decree, the First Circuit Court of Appeals explained:

> We agree with other circuits that the formal label of "consent decree" need not be attached; it is the reality, not the nomenclature which is at issue. Sometimes the question has been phrased in terms of whether a given court order is the "functional equivalent of a consent decree"; the better articulation may be to ask whether the order contains the sort of judicial involvement and actions inherent in a "court-ordered consent decree."

*Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009). The First Circuit considered three factors articulated by the United States Supreme Court as evidence of a "court-ordered consent decree": first, "the change in legal relationship must be 'court-ordered[,]'" "[s]econd, there must be judicial approval of the relief vis-a-vis the merits of the case," and "[t]hird, there must be judicial oversight and ability to enforce the obligations imposed on the parties." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 & n.7 (2001) (in turn citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994))).

The First Circuit elaborated that "an obligation to comply and the provision of judicial oversight to enforce that obligation are the sine qua non for a consent decree. While a consent decree begins as a settlement, it is one that 'includes an injunction,

12

or some other form of specific relief,' which may ultimately be enforceable by contempt." *Id.* (citing *Smyth v. Rivero*, 282 F.3d 268, 279-81 (4th Cir. 2002); *Roberson v. Giuliani*, 346 F.3d 75, 82-83 (2d Cir. 2003); *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002), and quoting CHARLES ALAN WRIGHT & MARY KAY KANE, LAW OF FEDERAL COURTS § 98 at 702 n.2 (6th ed. 2002) (citation amended)) (internal citations omitted)).

      Several aspects of the Moving Parties' proposed consent order implicate the First Circuit's holding regarding a court-ordered consent decree. First, the proposed consent order specifically provides "the Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms." *Proposed Consent Order* ¶ 18. Second, the proposed consent order enjoins Methuselah from discriminatory housing rental practices or from future professional relationships with RLR, Mr. Ross, or Mr. Bennett, *id.* ¶¶ 13, 14, and authorizes the Court to impose, on the Government's motion, "any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been formed, and an award of damages, costs, and reasonable attorney['s] fees which may have been occasioned by the violation or failure to perform." *Id.* ¶ 19. To use the language of the First Circuit, these provisions of the proposed consent order ring of ongoing "judicial oversight and ability to enforce the obligations imposed on the parties." *Aronov*, 562 F.3d at 90. The other two *Buckhannon* factors similarly appear implicated by the terms of the proposed consent order, namely in that the parties request a court order to effectuate its proposed terms and the proposed consent order

13

includes a description of the merits of the case prior to stating the agreed-upon relief. *Proposed Consent Order* ¶¶ 1-9.

Mindful of this framing, the Court is wary of Rule 54's mandate that a court may issue a final judgment, which includes a decree, as to fewer than all parties in a multi-party case "only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). The Moving Parties do not address whether there is any cause for delaying judgment as to the Government's claims against Methuselah until a judgment adjudicating all the claims and all the parties' rights and liabilities may be entered. The Court thus orders the Moving Parties to respond to the following questions prior to issuing their proposed order:

1) Does the proposed consent order constitute a consent decree, and thus a judgment, under the law of the First Circuit and Federal Rules of Civil Procedure?

2) If so, is there any just reason to delay entering the proposed consent order between the Government and Methuselah until entry of a judgment adjudicating all the claims and all the parties' rights and liabilities?

### C. Service of Other Defendants

Finally, the proposed consent order clearly provides that it "does not resolve any of the United States' claims against Defendant Robert Ross, Defendant RLR Enterprises, Defendant Brian Bennett, or Defendant Henry Irvin Investments, LLC (the 'Excluded Defendants')." *Proposed Consent Decree* ¶ 9; *accord* ¶ 10 ("The provisions of this Consent Order shall apply to Defendant Methuselah and its officers, agents, employees, and all other persons or entities in active concert or participation with them, except that they do not apply to any of the Excluded Defendants").

Nevertheless, the District of Maine Local Rules specifically provide an opposing party twenty-one days to object to a motion. D. ME. LOC. R. 7(b).

In this case, it is not clear whether the Moving Parties have served Mr. Ross, Mr. Bennett, RLR, or Henry Irvin with a copy of their joint motion to put them on notice of their proposed consent order and ensure they know of their right and deadline to object, should they wish to do so. This question is complicated by the fact that Mr. Ross, RLR, and Henry Irvin have been found in default for failure to appear, *see Order* (ECF No. 15), and, under Federal Rule of Civil Procedure 5, "[n]o service is required on a party who is in default for failing to appear." FED. R. CIV. P. 5(a)(2). Mr. Bennett, however, answered the complaint, *Bennett Answer*, and Rule 5 requires every party be served with, inter alia, "a written motion, except one that may be heard ex parte" and "a written notice, appearance, demand, or offer of judgment, or any similar paper." FED. R. CIV. P. 5(a)(1).

The Court thus orders the Moving Parties to respond to the following questions:

1) Have the Moving Parties served the joint motion for consent order on, respectively, Mr. Bennett, Mr. Ross, RLR, and Henry Irvin?

2) If he has not been served with the motion, is the Court permitted under the Federal Rules of Civil Procedure to consider the joint motion for consent order prior to service and a twenty-one-day period for Mr. Bennett to file any objection?

3) Do the Federal Rules of Civil Procedure require service of the motion required on the defaulted Defendants: Mr. Ross, RLR, and Henry Irvin?

### III. CONCLUSION

The Court will hold the Government's and Methuselah Tree, LLC's Joint Motion for Consent Order (ECF No. 29) in abeyance pending further order of the Court while these issues are resolved.

The Court ORDERS the United States and Methuselah Tree, LLC to respond to the nine questions posed by the Court in this order within fourteen days of the publication of this order. Should Ms. Debrienza or any of the other Defendants wish to address the issues raised by the Court, they may also do so within this same period.

SO ORDERED.

    /s/ John A. Woodcock, Jr.
    JOHN A. WOODCOCK, JR.
    UNITED STATES DISTRICT JUDGE

Dated this 26th day of March, 2025