UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| DESEREA DEBRIENZA, | ) |
| | ) |
| Intervenor Plaintiff, | ) |
| | ) |
| v. | )   2:24-cv-00204-JAW |
| | ) |
| METHUSELAH TREE, LLC, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER ON JOINT MOTION FOR CONSENT DECREE**

In a civil action against multiple defendants for discrimination on the basis of sex in violation of the Fair Housing Act, the federal government and one of the defendants jointly move for a consent decree resolving the government's claims against that defendant. After being provided with additional information establishing the intervenor's consent to the terms of the proposed order, that no just cause exists for delay, and that all other defendants have been served with notice of the joint motion, the court grants the joint motion for consent decree and separately issues the proposed consent decree with minor clarifying revisions.

I. **BACKGROUND**[1]

A. **Allegations in the Complaint**

On June 3, 2024, the United States of America (the Government) filed a civil complaint on behalf of Deserea Debrienza pursuant to 42 U.S.C. § 3612(o) against Robert Ross, Brian Bennett, Methuselah Tree, LLC (Methuselah), RLR Enterprises, LLC (RLR), and Henry Irvin Investments, LLC (Henry Irvin) (together, the Defendants), alleging the Defendants discriminated against Ms. Debrienza on the basis of sex in violation of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619. *Compl.* (ECF No. 1) (*Gov't's Compl.*).

Specifically, the Government alleges Methuselah, a Maine limited liability company (LLC), owned and operated Apartment Number 4 located at 2 River Street in Lewiston, Maine (the 2 River Street property) and employed RLR, an LLC of which Mr. Ross was the sole member, as the property's onsite manager. *Id.* ¶¶ 4-6. Henry Irvin, another Maine LLC, owned and operated Apartment Number 3 located at 61 River Street in Lewiston, Maine (the 61 River Street property) and similarly employed RLR and Mr. Ross as that property's onsite manager. *Id.* ¶¶ 7-8. RLR in turn employed Mr. Bennett to perform maintenance services at both River Street properties. *Id.* ¶ 10.

Ms. Debrienza was a tenant of the 2 River Street property from about April 4, 2019 until about July 1, 2020, and of the 61 River Street property from about July 1,

---

[1] For a more complete description of the background of this case, see Preliminary Order on Joint Motion for Consent Order (ECF No. 40).

2

2020 until about August 20, 2020. *Id.* ¶¶ 11-17. During this time, Ms. Debrienza was in a vulnerable position on account of her limited resources and urgent need to provide housing for her family, including two young children. *Id.* ¶ 31.

On June 11, 2021, Ms. Debrienza timely filed a housing discrimination complaint (HUD Complaint) with the United States Department of Housing and Urban Development (HUD), alleging the Defendants discriminated against her on the basis of sex in violation of the FHA. *Id.* ¶ 37. Subsequently, the Government filed this complaint alleging the Defendants violated the FHA by discriminating against Ms. Debrienza on the basis of sex, submitting that Mr. Ross's and Mr. Bennett's discriminatory conduct occurred while they and RLR were exercising their authority as employees and agents of, respectively, Methuselah at the 2 River Street property and Henry Irvin at the 61 River Street property, and that these corporate defendants are thus vicariously liable. *Id.* ¶¶ 44-47. The Government seeks declaratory and injunctive relief against the Defendants, in addition to monetary damages to be paid to Ms. Debrienza pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1). *Compl.* at 10-11, *Prayer for Relief* (a) – (e).

    **B.**    **Procedural Developments**

Summonses and the Government's complaint were issued to all Defendants on June 4, 2024. *Summons in a Civ. Action* (ECF No. 3). Methuselah waived service on June 25, 2024 and counsel entered an appearance on Methuselah's behalf on July 2, 2024. *Waiver of the Serv. of Summons* (ECF No. 4); *Appearance of Counsel* (ECF No. 5). Summonses were served, respectively, on Henry Irvin on June 20, 2024; Mr.

Bennett on July 8, 2024; Mr. Ross on July 9, 2024; and RLR on July 9, 2024. *Summons in a Civ. Action* (ECF No. 6) (*Henry Irvin Executed Summons*); *Summons in a Civ. Action* (ECF No. 7) (*Bennett Executed Summons*); *Summons in a Civ. Action* (ECF No. 8) (*Ross Executed Summons*); *Summons in a Civ. Action* (ECF No. 9) (*RLR Executed Summons*).

On July 23, 2024, Mr. Bennett, appearing pro se, filed an answer to the complaint "strongly deny[ing] all [a]llegation[s] made by Ms[.] Debrienza," stating "[t]h[e]y are false and made up." *Answer* at 1 (ECF No. 12) (*Bennett Answer*). Methuselah answered the complaint on August 12, 2024. *Def. Methuselah Tree, LLC's Answer to Pl.'s Compl. and Affirmative Defs.* (ECF No. 10) (*Methuselah Answer*). The remaining Defendants—RLR, Mr. Ross, and Henry Irvin (together, the Non-answering Defendants)—did not answer the complaint.

On August 29, 2024, the Government moved for an entry of default against the Non-answering Defendants. *Req. for Clerk to Enter Default Against Defs. Henry Irvin[] Invs. LLC, Robert Ross, and RLR Enters.* (ECF No. 14). The Clerk of Court granted the motion and entered default against the Non-answering Defendants that same day. *Order* (ECF No. 15).

Ms. Debrienza moved to intervene as a matter of right on December 10, 2024 and the United States Magistrate Judge granted her motion on January 2, 2025, noting Ms. Debrienza's motion was unopposed. *Pl./Intervenor Deserea Debrienza's Mot. to Intervene* (ECF No. 18); *Order* (ECF No. 21). Ms. Debrienza filed an intervenor complaint on January 8, 2025, alleging violations of the FHA (Count I),

4

negligence (Count II), assault (Count III), battery (Count IV), intentional infliction of emotional distress (Count V), and breach of the covenant of quiet use and enjoyment (Count VI). *Compl. in Intervention* (ECF No. 22) (*Debrienza Compl.*). She demanded a jury trial on all counts on January 22, 2025. *Demand for Trial by Jury* (ECF No. 26).

### C. Pending Joint Motion for Consent Order between the Government and Methuselah

On February 6, 2025, the Government and Methuselah (together, the Moving Parties) jointly moved the Court to enter a consent order, seeking to resolve all claims brought by the Government against Methuselah and submitting as an attachment the proposed order. *Joint Mot. for Consent Order* (ECF No. 29) (*Joint Consent Order Mot.*); *see also id.*, Attach. 1, *[Proposed] Consent Order between the U.S. and Methuselah Tree, LLC* (*Proposed Consent Order*).

The Moving Parties' joint motion additionally informs the Court that, as set forth in paragraph sixteen of the proposed consent order, Ms. Debrienza will separately execute a release with Methuselah. *Joint Consent Mot. Order* at 1. The Moving Parties explain that the proposed consent order does not resolve any of the Government's claims against Mr. Ross, RLR, Mr. Bennett, or Henry Irvin. *Id.* at 2.

The Moving Parties' proposed consent order, attached to the joint motion and signed by both the Government and Methuselah, contemplates that the Court will order Methuselah, should it "re-enter[] the business of owning, operating, or managing rental properties" to notify the Government within fifteen days of its interest in the property, the property's address, and the number of dwelling units at

5

the property, and to provide a copy of the documents memorializing the transfer. *Proposed Consent Order* ¶ 12.  Further, the parties propose the Court enjoin Methuselah and its officers, agents, and employees from engaging in any form of discriminatory conduct with respect to rental of dwellings.  *Id.* ¶ 13.  The proposed consent order also permanently enjoins Methuselah from hiring, retaining, or otherwise using or relying on RLR, Mr. Ross, or Mr. Bennett for any purpose.  *Id.* ¶ 14.

Methuselah also commits to paying $35,000 in monetary damages to Ms. Debrienza within fifteen days of the consent order's entry.  *Id.* ¶ 15.  "As a prerequisite to receiving any payments," the proposed order states, "Ms. Debrienza shall complete, execute, and deliver to counsel for Defendant Methuselah a W-9 form and a release in a form previously negotiated.  Such release shall state that Ms. Debrienza does not release any claims she might have against Defendant RLR, Defendant Henry Irvin, Defendant Ross, or Defendant Bennett."  *Id.* ¶ 16.  The proposed order also represents that the payment to be made to Ms. Debrienza constitutes a debt within the statutory meaning of 11 U.S.C. § 523(a)(6), such that Methuselah will not seek to discharge any part of this debt in bankruptcy.  *Id.* ¶ 17.

The proposed consent order continues that "[t]he Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the United States' claims against Defendant Methuselah shall be dismissed with prejudice" and contemplates "[t]he order shall be in effect for a period of three (3) years from the date of its entry" unless the Government moves to extend its duration

6

in the event of noncompliance or in the interests of justice. *Id.* ¶ 18. The proposed consent order concludes that, except for the possibility of the court-ordered imposition of reasonable attorney's fees in the event of noncompliance by Methuselah, "the parties will each bear their own costs and attorney['s] fees associated with this litigation." *Id.* ¶ 21.

### D. The Court's Preliminary Order and the Parties' Responsive Filings

#### 1. The Court's Preliminary Order

On March 26, 2025, the Court issued a preliminary order on the Moving Parties' joint motion, identifying deficiencies in the motion and proposed consent order and asking the Moving Parties to submit responsive briefing before the Court issued a final ruling on the merits. *Prelim. Order on Joint Mot. for Consent Order* (ECF No. 40) (*Prelim. Order*). The Court specifically raised three types of issues.

First, the Court noted the lack of Ms. Debrienza's written consent to the terms of the proposed consent order, despite the consent order including representations about monetary damages, requiring her to submit paperwork prior to receiving payment, and lacking clarity as to its effect on Ms. Debrienza's intervenor claim against Methuselah and request for attorney's fees. *Id.* at 10-11.

Second, the Court emphasized its concern that what the Moving Parties characterized as a consent order in fact constitutes a final judgment as to Methuselah, and thus implicates Federal Rule of Civil Procedure 54's restriction on piecemeal final judgments against fewer than all parties without an express

7

determination by the Court that there is no just reason for delay. *Id.* at 11-14 (citing FED. R. CIV. P. 54(b)).

Third, the Court indicated that the record before it failed to reflect whether the other defendants—Mr. Ross, Mr. Bennett, RLR, and Henry Irvin—had been served with a copy of the joint motion and asked the Moving Parties to inform it whether such service was required prior to the Court ruling on the joint motion, as well as offering argument, if necessary, as to whether service on the Non-answering Defendants was required in light of the previous entry of default against them. *Id.* at 14-15.

The Court ordered the Moving Parties to respond to its enumerated questions on these three issues within fourteen days of its preliminary order. *Id.* at 16.

### 2. The Moving Parties' Joint Response

The Moving Parties jointly responded to the preliminary order on April 9, 2025. *Joint Resp. to Preliminary Order* (ECF No. 44) (*Joint Resp.*). Taking the Court's identified issues in turn, the Moving Parties first aver that Ms. Debrienza would submit her own response to answer the Court's questions regarding her consent to the proposed consent order and "[a]s such, the Moving Parties provide no further response to those questions posed by the Court[] to be addressed by Ms. Debrienza." *Id.* at 1.

Turning to whether the proposed consent order constitutes a final judgment subject to Rule 54, the Moving Parties submit that, despite characterizing their proposal as a consent order, they "desire and expect the consent order to be a final resolution of claims by and between Plaintiff the United States of America and

8

Defendant Methuselah Tree, LLC, enforceable as a judicial decree." *Id.* at 2. Conceding their proposed consent decree is subject to Rule 54, the Moving Parties insist "there is no just reason to delay the requested entry of the Consent Order" and collect caselaw in which the First Circuit and other federal courts of appeal have permitted final judgment as to fewer than all parties under Rule 54. *Id.* Here, the Moving Parties say, the proposed consent order provides timely relief to Ms. Debrienza, resolves all claims against Methuselah, and does not impact the claims against any other Defendants. *Id.* at 2-3.

Finally, the Moving Parties address service of the joint motion on the other Defendants. *Id.* at 3. "To provide certainty" on this issue, the Government informs the Court that it served copies of the joint motion on each named defendant, including those in default, on April 3, 2025 by certified mail. *Id.* The Moving Parties do not object to permitting all parties twenty-one days to file an objection to their joint motion. *Id.*

### 3. Ms. Debrienza's Response

On April 28, 2025, Ms. Debrienza filed a response to the Court's preliminary order, informing the Court via the attached declaration that "[she] ha[s] reviewed the proposed consent order and [] consent[s] to it," that "[t]he Court is permitted to enter the proposed consent order without [her] signature," that "[she] understand[s] the provision of the proposed consent order governing costs and attorney['s] fees applies to [her], and [she] consent[s] to those terms," and that "[t]he proposed consent order does not affect [her] claims against Methuselah raised in [her] intervenor complaint; however, under the terms of the release, [she] agree[s] to dismiss those claims against

9

Methuselah, and only Methuselah, after [she] receive[s] Methuselah's settlement payment." *Pl. Intervenor Resp. to Prelim. Order*; *id.*, Attach. 1, *Decl. of Deserea Debrienza* (ECF No. 55) (*Debrienza Decl.*).

## II.    LEGAL STANDARD

Rule 54 defines a "judgment" as "includ[ing] a decree and any order from which an appeal lies." FED. R. CIV. P. 54(a).  In a case involving multiple claims or multiple parties, the Rule instructs that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b).  "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

The First Circuit Court of Appeals has distinguished a consent decree from a mere order by explaining:

> We agree with other circuits that the formal label of "consent decree" need not be attached; it is the reality, not the nomenclature which is at issue.  Sometimes the question has been phrased in terms of whether a given court order is the "functional equivalent of a consent decree"; the better articulation may be to ask whether the order contains the sort of judicial involvement and actions inherent in a "court-ordered consent decree."

*Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009).  In *Aronov*, the First Circuit considered three factors articulated by the United States Supreme Court as evidence of a "court-ordered consent decree": first, "the change in legal relationship must be 'court-ordered[,]'" "[s]econd, there must be judicial approval of the relief vis-a-vis the

10

merits of the case," and "[t]hird, there must be judicial oversight and ability to enforce the obligations imposed on the parties." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 & n.7 (2001) (in turn citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994))).

The First Circuit continued that "an obligation to comply and the provision of judicial oversight to enforce that obligation are the sine qua non for a consent decree. While a consent decree begins as a settlement, it is one that 'includes an injunction, or some other form of specific relief,' which may ultimately be enforceable by contempt." *Id.* at 91 (citing *Smyth v. Rivero*, 282 F.3d 268, 279-81 (4th Cir. 2002); *Roberson v. Giuliani*, 346 F.3d 75, 82-83 (2d Cir. 2003); *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002), and quoting CHARLES ALAN WRIGHT & MARY KAY KANE, LAW OF FEDERAL COURTS § 98 at 702 n.2 (6th ed. 2002) (citation amended)) (internal citations omitted)).

Further, Federal Rule of Civil Procedure 5 requires every party be served with, inter alia, "a written motion, except one that may be heard ex parte" and "a written notice, appearance, demand, or offer of judgment, or any similar paper." FED. R. CIV. P. 5(a)(1). Under the District of Maine Local Rules, an opposing party may object to a motion within twenty-one days. D. ME. LOC. R. 7(b).

## III. DISCUSSION

Desiring that the claims against Methuselah be settled by a joint consent decree, and to avoid the burden and risks of protracted litigation, the Moving Parties agree the Court has jurisdiction over the parties and the subject matter of this action.

11

The Moving Parties stipulate that this order, being entered into with their consent, shall in no way constitute an adjudication or finding on the merits of this consolidated case, nor be construed as an admission by Methuselah or a finding of wrongdoing or violation of any applicable federal law or regulation. Pursuant to her written declaration, Ms. Debrienza has reviewed and consents to the terms of the proposed consent order, including being governed by the terms of the consent order with regard to payment of damages by Methuselah to Ms. Debrienza, her required completion of a W-9 form, and the agreement of the Moving Parties to bear their own costs and attorney's fees. *See Debrienza Decl.* However, the Moving Parties also agree that this order does not address or have any effect on Ms. Debrienza's claims against Methuselah, which she and Methuselah will resolve separately. *Id.* Furthermore, the Moving Parties state that this order does not address or have any effect on the Government's or Ms. Debrienza's claims against Mr. Ross, Mr. Bennett, RLR, or Henry Irvin.

      The structure of this proposed consent decree is unusual in that the only parties to the decree are the United States and Methuselah, yet Ms. Debrienza, formally an intervenor-plaintiff, is an intended beneficiary of the agreement between the United States and Methuselah, even though she is not a signatory to the motion or the proposed consent order submitted by the Moving Parties. In her signed declaration, Ms. Debrienza says that she consents to the decree, and despite the fact she has not signed it, she says the Court may issue the decree without her signature. *Debrienza Decl.* at 1. Finally, she says that she has the continued right to proceed

12

against Methuselah, but if Methuselah pays her the $35,000 in accordance with the consent decree, she will dismiss her claims against Methuselah only. *Id.* at 1-2. Thus, although not a party to the consent decree, she is its beneficiary. Whether Ms. Debrienza may enforce the terms of a consent decree to which she is not a party is unclear, and the Court hopes it will not be necessary to resolve.

There must be a reason the United States, Methuselah and Ms. Debrienza designed this consent decree to benefit Ms. Debrienza and determined not to have her join in the joint motion for approval, but it is not apparent in the record before the Court. The Court is comforted by the fact that they are each represented by exceptionally able counsel. In approving this consent decree, the Court assumes that Methuselah will live up to the terms of the consent decree, that Ms. Debrienza will be paid in a timely manner, and that Ms. Debrienza will dismiss Methuseleh from the lawsuit, and the Court will thus leave any complications that could arise from the uniqueness of the proposed decree to eventualities that may not occur. Should such circumstances arise in the future, the Court retains jurisdiction to enforce the terms of the consent decree for its duration pursuant to *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994).

Further, the Moving Parties profess that, despite its characterization as an order, they "desire and expect the consent order to be a final resolution of claims by and between Plaintiff the United States of America and Defendant Methuselah Tree, LLC, enforceable as a judicial decree." *Joint Resp.* at 2. Notice of the joint motion having been served upon Mr. Ross, Mr. Bennett, RLR, and Henry Irvin, and no

13

objections having been filed, the Court concludes, based upon representations by the Moving Parties, there is no just reason to delay entering this final judgment as to the claims against Methuselah pursuant to Rule 54. *Id.*

## IV. CONCLUSION

The Court GRANTS the United States' and Methuselah Tree LLC's Joint Motion for Consent Order (ECF No. 29). Contemporaneous with this Order, the Court is separately issuing the Consent Decree.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2025